JASON R. HULL [11202]
JHULL@MOHTRIAL.COM
**MARSHALL OLSON & HULL, PC**
TEN EXCHANGE PLACE, SUITE 350
SALT LAKE CITY, UTAH 84111
TELEPHONE: 801.456.7655

ATTORNEYS FOR PLAINTIFF AND PROPOSED
CLASS COUNSEL

* PRO HAC VICE FORTHCOMING

J. GERARD STRANCH, IV*
GSTRANCH@STRANCHLAW.COM
GRAYSON WELLS*
GWELLS@STRANCHLAW.COM
DARRIUS D. DIXON*
DDIXON@STRANCHLAW.COM
**STRANCH, JENNINGS & GARVEY, PLLC**
THE FREEDOM CENTER
223 ROSA L. PARKS AVENUE, SUITE 200
NASHVILLE, TN 37203
TELEPHONE: (615) 254-8801

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| CRYSTAL HALL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INSTRUCTURE INC.<br><br>Defendant. | **COMPLAINT**<br>**[PROPOSED CLASS ACTION]**<br><br>JURY TRIAL DEMANDED<br><br>Case No.: 2:26-cv-397 |

Plaintiff Crystal Hall ("Plaintiff"), through her attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Instructure, Inc. ("Defendant" or "Instructure"). Plaintiff alleges the following on information and belief, except as to her own actions, counsel's investigation, and facts of public record.

### NATURE OF ACTION

1.     This class action arises from Defendant's failure to protect highly sensitive personal information and education-related private information entrusted to it through Canvas.[1]

---

[1] Instructure, *Institutions & Educators Privacy, FAQ,* https://www.instructure.com/privacy-security/institutions-educators-faq.

2.    Defendant is an education technology company that provides Canvas, a cloud-based learning management system used by schools, colleges, universities, instructors, administrators, staff, parents, and students.[2]

3.    As such, Defendant stores and maintains a litany of personal information and education-related private information about Canvas users, including names, email addresses, student identification numbers, user roles, user content, system data, log files, and messages among Canvas users.[3]

4.    Defendant lost control over that information when an unauthorized actor infiltrated Canvas and obtained users' personal information in a data breach.[4]

5.    It is unknown precisely how long the unauthorized actor had access to Canvas before the Data Breach was fully contained. In other words, Defendant had no effective means to prevent, detect, stop, or mitigate the unauthorized activity before users' personal information was taken.[5]

6.    On information and belief, the unauthorized actor was able to access Canvas because Defendant failed to maintain reasonable security safeguards and protocols to protect Plaintiff's and Class Members' private information.[6]

7.    Plaintiff is a Data Breach victim. She brings this class action on behalf of herself and all others harmed by Defendant's misconduct.

---

[2] *Id.*

[3] *Id.* Security Incident Update & FAQs, Instructure, https://www.instructure.com/incident_update.

[4] Security Incident Update & FAQs, Instructure, https://www.instructure.com/incident_update.

[5] *Id.*

[6] *Id.*

8. The exposure of Plaintiff's and Class Members' private information to unauthorized actors is a bell that cannot be unrung. Before the Data Breach, their private information was private. Now, their private information is exposed and unsecure.

## PARTIES

9. Plaintiff, Crystal Hall, is a natural person and citizen of Tennessee. She is domiciled in Tennessee, where she intends to remain.

10. Plaintiff used Canvas as a student of the University of Tennessee. Upon information and belief, Plaintiff's personal information and education-related private information were maintained by Defendant through Canvas and compromised in the Data Breach.

11. Defendant, Instructure, Inc., has its principal place of business at 6330 South 3000 East, Suite 700, Salt Lake City, Utah 84121.

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5 million, exclusive of interests and costs. Indeed, the Data Breach in this case reportedly affected the Private Information of 4.3 million people, so even nominal damages would place the amount in controversy over $5 million. Moreover, minimal diversity exists pursuant to 28 U.S.C. § 1332(d)(2)(A) because Plaintiff is a citizen of Tennessee and Defendant is a citizen of Utah.

13. This Court has general personal jurisdiction over Instructure because its headquarters is in this State, and it conducts a substantial portion of its business in this State.

14. Venue is proper in this Court under 28 U.S.C. § 1391(a)(1) because (1) a substantial part of the events giving rise to this action occurred in this District; (2) Defendant is domiciled in this District; and (3) on information and belief, Defendant's negligence and/or its willful decisions

3

to ignore Defendant's obligations to implement reasonable, industry standard cybersecurity safeguards occurred at Defendant's Utah headquarters.

## BACKGROUND

*Defendant Collected and Stored the PII of Plaintiff and the Class*

15. Defendant Collected and Stored Plaintiff's and Class Members' Private Information

16. Defendant provides Canvas, a cloud-based internet-accessible virtual learning platform used by educational institutions to facilitate online learning and related educational services.[7]

17. Canvas is used by instructors, educators, staff, administrators, parents, and students to provide and engage with e-learning courses and related content.[8]

18. As part of its business, Defendant collects, processes, stores, and maintains personal information and education-related private information belonging to Canvas users.[9]

19. The personal information stored in Canvas may include names, email addresses, student identification numbers, and user roles.[10]

20. Canvas also stores user-generated content, including exercises, assignments, tests, course materials, and learning modules submitted by users while participating in courses.[11]

21. Defendant's Product Privacy Notice further identifies the personal information collected through its products as including first and last names, email addresses, academic

---

[7] Instructure, *Institutions & Educators Privacy, FAQ,* https://www.instructure.com/privacy-security/institutions-educators-faq (last visited May 8, 2026).
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*

institution information, usernames and passwords, geographic information, profile information, phone numbers, student ID numbers, in-application messages, discussion group comments, submitted content, video images, and voice recordings.[12]

22.     Defendant represents that it is "committed to protecting the information" it processes and that it uses such information only to support students and education.[13]

23.     Defendant further represents that it will "implement and maintain appropriate technical, administrative, and organizational measures to protect data in accordance with regulatory requirements." [14]

24.     Defendant also represents that it will establish and maintain policies, procedures, and practices that limit access to data and protect against unlawful or unintentional access or disclosure.[15]

25.     Defendant has held itself out as a signatory to the Student Privacy Pledge as part of its commitment to protecting the privacy of students, educators, and institutions.[16]

26.     The Student Privacy Pledge was created as a voluntary, public, and legally enforceable statement by education technology companies to safeguard student privacy.[17]

27.     By collecting and storing Plaintiff's and Class Members' private information and acknowledging the sensitive nature of this information Defendant both recognized and assumed a duty to protect that information from unauthorized access, disclosure, theft, and misuse.

---

[12] Instructure, *Product Privacy Policy,* https://www.instructure.com/policies/product-privacy-policy. (last visited May 8, 2026).
[13] *Id*.
[14] *Id*.
[15] *Id*.
[16] *Id*.
[17] Student Privacy Pledge, *Future of Privacy Forum*, https://fpf.org/student-privacy-pledge/. (last visited May 8, 2026).

*Defendant's Data Breach*

28.     On April 29, 2026, Defendant detected unauthorized activity in Canvas.[18]

29.     Defendant claims that it revoked the unauthorized party's access, started an investigation, and engaged outside forensic experts after detecting the unauthorized activity.[19]

30.     Based on Defendant's investigation so far, the data taken in the April 29 incident included personal information of users at affected organizations.[20]

31.     The compromised information confirmed at this time includes names, email addresses, student ID numbers, and messages among Canvas users. [21]

32.     On May 7, 2026, Defendant identified additional unauthorized activity tied to the same incident.[22]

33.     During the May 7 activity, the unauthorized actor made changes to pages that appeared when some students and teachers were logged in through Canvas.[23]

34.     Defendant temporarily took Canvas offline into maintenance mode to contain the activity, investigate, and later confirmed that the unauthorized actor carried out the activity by exploiting an issue related to Defendant's Free-For-Teacher accounts.[24]

35.     Defendant also confirmed that the same issue led to the unauthorized access the prior week. [25]

36.     Following the Data Breach, Defendant temporarily shut down Free-For-Teacher

---

[18] Instructure, *Security Incident Update & FAQs*, https://www.instructure.com/incident_update.
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*

accounts to remove the access path used by the unauthorized actor.[26]

37.    Defendant also revoked privileged credentials and access tokens tied to affected systems, deployed additional platform protections, rotated internal keys, restricted token creation pathways, and added monitoring across its platforms.[27]

38.    These post-Breach measures support the reasonable inference that Defendant's pre-Breach safeguards were inadequate to prevent, detect, stop, or mitigate the unauthorized access before Plaintiff's and Class Members' private information was compromised. [28]

39.    On May 5, 2026, Defendant notified impacted organizations of the Data Breach. and Defendant directed students, parents, and employees at affected organizations to contact their institutions as the "first point of contact" for information specific to their situation.[29]

40.    On May 7, 2026, Plaintiff Hall received an email from the University of Tennessee advising that Canvas was shut down due to a nationwide breach incident. [30]

41.    The Data Breach affected educational institutions across the country and disrupted access to Canvas for students and educators.[31]

42.    The unauthorized activity has been attributed to ShinyHunters, a hacker group which claimed to have stolen Canvas data associated with thousands of schools. [32]

43.    The stolen data reportedly included student names, email addresses, and private

---

[26] *Id.*
[27] *Id*.
[28] *Id*.
[29] *Id*.
[30] *Id*.
[31] Emma Roth, *Canvas Is Online Again After ShinyHunters Threaten to Leak Schools' Data*, THE VERGE (May 8, 2026), https://www.theverge.com/tech/926458/canvas-shinyhunters-breach.
[32] A.J. Vicens, Schools Reach Out to Canvas Hackers as Breach Hits US Classrooms, Source Says, Reuters (May 8, 2026), https://www.reuters.com/legal/litigation/schools-reach-out-hackers-canvas-breach-hits-us-classrooms-source-says-2026-05-08/.

messages among students, teachers, and staff.[33]

44.     Defendant's public notice does not identify all affected users, the complete duration of unauthorized access, the full scope of affected organizations, or the complete manner in which the unauthorized actor obtained access to Canvas.

45.     Defendant's investigation remains ongoing, and Defendant has stated that it will share more information as findings are verified.[34]

46.     Because of Defendant's Data Breach, Plaintiff's and Class Members' private information was placed into the hands of unauthorized actors.

47.     As a result, Plaintiff and Class Members face a continuing risk of phishing, social engineering, identity theft, privacy invasion, and misuse of their personal information and private Canvas communications.

### *Plaintiff Crystal Hall 's Experiences and Injuries*

48.     Plaintiff Crystal Hall is a student of the University of Tennessee.

49.     Plaintiff used Canvas in connection with her education.

50.     As a result, Defendant obtained, maintained, processed, and stored Plaintiff's personal information and education-related private information through Canvas.

51.     Plaintiff is careful about the privacy and security of her personal information.

52.     Plaintiff does not knowingly transmit her private information over the internet in an unsafe manner and takes reasonable steps to protect her information.

53.     Plaintiff used Canvas with the reasonable expectation that Defendant would use reasonable measures to protect her private information from unauthorized access and disclosure.

---

[33] *Id.*

[34] Instructure, *Security Incident Update & FAQs*, https://www.instructure.com/incident_update.

54.     Plaintiff first learned about the Data Breach through news reports and a direct communication from the University of Tennessee stating that the parent platform was shutdown due to a nationwide breach.

55.     Plaintiff spent time researching the Data Breach, reviewing available information, and trying to determine whether her private information was affected.

56.     Through the Data Breach, Defendant compromised Plaintiff's personal information and education-related private information, including, upon information and belief, her name, email address, student ID number, Canvas communication and other sensitive information not yet discovered as Defendant continues its investigation and deals with the unresolved hacker ransom situation.

57.     Plaintiff suffered lost time responding to the Data Breach, including time spent reviewing communications, researching the incident, and monitoring information about the scope and consequences of the Data Breach.

58.     Plaintiff suffered stress, anxiety, fear, and frustration because of the Data Breach.

59.     Plaintiff suffered additional stress because the Data Breach occurred while she was working toward graduation and relying on Canvas for educational purposes.

60.     The Data Breach and resulting Canvas disruption interfered with Plaintiff's sense of security in the platform she used for her education.

61.     Plaintiff worries about what information was exposed in the Data Breach and how her personal information and private Canvas communications may be misused.

62.     Plaintiff suffered actual injury from the exposure and theft of her private information, which violated her rights to privacy.

9

63. Plaintiff suffered actual injury in the form of damages to and diminution in the value of her private information.

64. Plaintiff suffered imminent and impending injury arising from the substantially increased risk of phishing, social engineering, fraud, misuse, and identity theft because Defendant's Data Breach placed her private information in the hands of unauthorized actors.

65. Because of the Data Breach, Plaintiff anticipates spending additional time and effort monitoring her information and mitigating the risk of future misuse.

66. Today, Plaintiff has a continuing interest in ensuring that her private information, which remains in Defendant's possession, is protected and safeguarded from additional breaches.

***Consumers Prioritize Data Security***

67. In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[35] Therein, Cisco reported the following:

    a. "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer respondents saying they won't purchase from an organization they don't trust with their data."[36]

    b. "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[37]

---

[35] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, CISCO, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited May 8, 2026).
[36] *Id*. at 3.
[37] *Id*.

c.      89% of consumers stated that "I care about data privacy."[38]

d.      83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[39]

e.      51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[40]

f.      75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[41]

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

68.     Because of Defendant's failure to prevent the Data Breach, Plaintiff and Class Members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

a.      loss of the opportunity to control how their PII is used;

b.      diminution in value of their PII;

c.      compromise and continuing publication of their PII;

d.      out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

e.      lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identity theft and fraud;

---

[38] *Id*. at 9.
[39] *Id*.
[40] *Id*.
[41] *Id*. at 11.

11

f.   delay in receipt of tax refund monies;

g.   unauthorized use of their stolen PII; and

h.   continued risk to their PII which remains in Defendant's possession—and is thus as risk for futures breaches so long as Defendant fails to take appropriate measures to protect the PII.

69.   Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

70.   The value of Plaintiff's and Class's PII on the black market is considerable. Stolen PII trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "Dark Web"—further exposing the information.

71.   It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the PII far and wide.

72.   One way that criminals profit from stolen PII is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross-referencing and combining two sources of data— first the stolen PII/PHI, and second, unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

73.   The development of "Fullz" packages means that the PII exposed in the Data Breach can easily be linked to data of Plaintiff and the Class that is available on the internet.

74.   In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators

12

and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and other Class Members' stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

75.     Defendant disclosed the PII of Plaintiff and Class Members for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII of Plaintiff and Class Members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

76.     Defendant's failure to promptly and properly notify Plaintiff and Class Members of the Data Breach exacerbated Plaintiff's and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant Knew—Or Should Have Known—of the Risk of a Data Breach***

77.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

78.     In 2024, a record 3,158 data breaches occurred—exposing approximately 1,350,835,988 sensitive records (i.e.,  211% increase year over year).[42]

79.     Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware

---

[42] *2024 Data Breach Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2025), https://www.idtheftcenter.org/wp-content/uploads/2025/02/ITRC_2024DataBreachReport.pdf.

of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[43]

80.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

***Defendant Failed to Follow FTC Guidelines***

81.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

82.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[44]  The FTC declared that, *inter alia*, businesses must:

> a.     protect the personal customer information that they keep;
>
> b.     properly dispose of personal information that is no longer needed;
>
> c.     encrypt information stored on computer networks;
>
> d.     understand their network's vulnerabilities; and
>
> e.     implement policies to correct security problems.

---

[43] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

[44] *Protecting Personal Information: A Guide for Business,* FED TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

83.     The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

84.     Furthermore, the FTC explains that companies must:

a.      not maintain information longer than is needed to authorize a transaction;

b.      limit access to sensitive data;

c.      require complex passwords to be used on networks;

d.      use industry-tested methods for security;

e.      monitor for suspicious activity on the network; and

f.      verify that third-party service providers use reasonable security measures.

85.     The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

86.     In short, Defendant's failure to use reasonable and appropriate measures to protect against unauthorized access to their current and former employees' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

### *FERPA Recognizes the Confidential Nature of Education Records*

87.     FERPA reflects the longstanding federal standard that student education records and personally identifiable information contained in those records are private and confidential. *See* 20 U.S.C. § 1232g(b)(1); 34 C.F.R. Part 99.

88.    FERPA applies to Defendant because Canvas operates as a third-party service provider to educational institutions and maintains student information on their behalf, placing Defendant within FERPA's framework for outside parties performing institutional services or functions for schools.[45]

89.    Under FERPA, an "education record" includes records, files, documents, and other materials that contain information directly related to a student and are maintained by an educational agency or institution, or by a person acting for such agency or institution. 20 U.S.C. § 1232g(a)(4)(A).

90.    FERPA also protects "personally identifiable information" from education records. The regulations define "personally identifiable information" to include, among other things, a student's name, student identification number, and other information that can be used to identify a student. 34 C.F.R. § 99.3.

91.    FERPA generally prohibits educational agencies and institutions from having a policy or practice of releasing education records, or personally identifiable information contained in education records, without written consent, subject to limited exceptions. 20 U.S.C. § 1232g(b)(1); 34 C.F.R. § 99.30.

92.    One such exception permits disclosure to contractors, consultants, volunteers, or other outside parties performing institutional services or functions, but only when those parties are subject to FERPA's use and redisclosure restrictions. 34 C.F.R. § 99.31(a)(1)(i)(B); 34 C.F.R. § 99.33(a).

---

[45] *Id.*

93.     Thus, FERPA and its regulations confirm that education-related personal information entrusted to service providers like Defendant must be treated as confidential and protected from unauthorized access, disclosure, and misuse.

94.     Defendant knew or should have known that the information maintained in Canvas included confidential education-related information subject to heightened privacy expectations.

### *Defendant Failed to Follow Industry Standards*

95.     Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

96.     Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

97.     Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR.DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

98.    These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

## CLASS ACTION ALLEGATIONS

99.    Plaintiff brings this class action on behalf of herself and all other individuals who are similarly situated for the Class defined below.

100.    Plaintiff seeks to represent a Nationwide Class of persons defined as follows:

All individuals residing in the United States whose private information was compromised in Defendant's Data Breach involving Canvas, which Defendant detected on or about April 29, 2026.

101.    Excluded from the Class are Defendant, its subsidiaries and affiliates, officers and directors, any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors, or assigns of any such excluded party, the judicial officer to whom this action is assigned, members of the judicial officer's immediate family, all judges assigned to hear any aspect of this litigation, their immediate family members, and any individuals who make a timely and effective election to be excluded from this matter using the correct protocol for opting out.

102.    This proposed class definition is based on the information currently available to Plaintiff. Plaintiff may modify the class definition in an amended pleading or when she moves for class certification, as necessary to account for newly learned or changed facts as the situation develops and discovery gets underway.

103.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on class-wide basis using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

18

104.    <u>Ascertainability</u>. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. After all, Defendant already identified the academic institutions they serve regarding the breach.

105.    <u>Numerosity</u>. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the Data Breach may have affected millions of Canvas users. Defendant represents that Canvas has more than 30 million active users worldwide, and public reporting states that the unauthorized actor claimed to have obtained Canvas data associated with nearly 9,000 schools and as many as 275 million users.[46]

106.    <u>Typicality</u>. Plaintiff's claims are typical of Class Members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

107.    <u>Adequacy</u>. Plaintiff will fairly and adequately protect the proposed Class's common interests. Their interests do not conflict with Class Members' interests. And Plaintiff has retained counsel—including lead counsel—that are experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

108.    <u>Commonality and Predominance</u>. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer the following questions:

---

[46] Instructure, Learning Management System, LMS,  https://www.instructure.com/lms-learning-management-system; A.J. Vicens, *Schools Reach Out to Canvas Hackers as Breach Hits US Classrooms, Source Says*, REUTERS (May 8, 2026), https://www.reuters.com/legal/litigation/schools-reach-out-hackers-canvas-breach-hits-us-classrooms-source-says-2026-05-08/; Liz Ticong, *Canvas Breach May Put 275M Users, 9,000 Schools at Risk*, TECHREPUBLIC (May 4, 2026), https://www.techrepublic.com/article/news-canvas-instructure-breach-275m-users/.

a.    if Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII;

b.    if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.    if Defendant was negligent in maintaining, protecting, and securing PII;

d.    if Defendant breached contract promises to safeguard Plaintiff's and the Class's PII;

e.    if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

f.    if Defendant's Breach Notice was reasonable;

g.    if the Data Breach caused Plaintiff and the Class injuries;

h.    what the proper damages measure is; and

i.    if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

109.    Superiority. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device

20

provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

**<u>FIRST CAUSE OF ACTION</u>**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

110.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

111.    Plaintiff and Class Members entrusted their PII and education-related private information to Defendant with the understanding that Defendant would safeguard that information, use it only for authorized educational and business purposes, and not disclose it to unauthorized third parties.

112.    Defendant owed Plaintiff and Class Members a duty to exercise reasonable care in collecting, processing, storing, maintaining, using, and protecting their PII.

113.    Defendant owed this duty because it was foreseeable that Defendant's failure to use adequate data security measures would compromise Plaintiff's and Class Members' private information in a data breach.

114.    Defendant had full knowledge of the sensitivity of the private information it collected and maintained through Canvas.

115.    Defendant knew or should have known that Plaintiff and Class Members would suffer injury if their names, email addresses, student identification numbers, Canvas messages, and other education-related private information were wrongfully accessed or disclosed.

116. Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury from inadequate security practices.

117. Defendant owed Plaintiff and Class Members at least the following duties:

a. to exercise reasonable care in handling and using the private information in its care and custody;

b. to implement reasonable and industry-standard security procedures sufficient to protect private information from unauthorized access, disclosure, theft, and misuse;

c. to monitor its systems for unauthorized activity;

d. to promptly detect attempts at unauthorized access;

e. to contain unauthorized access once detected;

f. to maintain reasonable access controls, authentication controls, token-management safeguards, administrative controls, monitoring, logging, and alerting systems;

g. to delete or securely dispose of private information it no longer needed to retain; and

h. to provide timely and accurate notice of any breach compromising Plaintiff's and Class Members' private information.

118. Defendant also owed Plaintiff and Class Members a duty to timely and accurately disclose the scope, nature, and occurrence of the Data Breach.

119. This duty was necessary so Plaintiff and Class Members could take appropriate steps to protect themselves, monitor for misuse, and mitigate the harms caused by the Data Breach.

22

120. Defendant knew or reasonably should have known that failing to exercise due care in collecting, storing, maintaining, and using Plaintiff's and Class Members' private information involved an unreasonable risk of harm.

121. That risk was foreseeable even if the harm occurred through the criminal acts of an unauthorized third party.

122. Defendant's duty to use reasonable security measures arose from its relationship with Plaintiff and Class Members.

123. Plaintiff and Class Members entrusted Defendant with confidential personal information and education-related private information through Canvas.

124. Defendant collected and maintained this information as a necessary part of providing Canvas and related educational services.

125. The risk that unauthorized actors would attempt to access and misuse Canvas user data was foreseeable.

126. Private information stored in educational technology systems is valuable to cybercriminals.

127. Defendant knew or should have known the risks associated with collecting, processing, storing, and maintaining Plaintiff's and Class Members' private information.

128. Defendant improperly and inadequately safeguarded Plaintiff's and Class Members' private information in deviation from reasonable industry standards and practices.

129. Defendant breached its duties as evidenced by the Data Breach.

130. Defendant breached its duties by failing to implement reasonable cybersecurity safeguards to protect Plaintiff's and Class Members' private information.

131. Defendant breached its duties by failing to prevent the unauthorized actor from accessing Canvas and taking Plaintiff's and Class Members' private information.

132. Defendant breached its duties by failing to timely detect, contain, and remediate the unauthorized access.

133. Defendant breached its duties by failing to properly supervise, monitor, and secure the systems, accounts, credentials, tokens, workflows, and access pathways used to maintain and protect Plaintiff's and Class Members' private information.

134. Defendant breached its duties by failing to maintain reasonable safeguards over its Free-For-Teacher accounts, which Defendant has identified as related to the unauthorized activity.

135. Defendant breached its duties by failing to ensure the confidentiality, integrity, and security of Plaintiff's and Class Members' private information.

136. Defendant further breached its duties by failing to provide Plaintiff and Class Members with reasonably prompt, complete, and accurate notice of the Data Breach.

137. Defendant has admitted that personal information of users at affected organizations was taken in the Data Breach, including names, email addresses, student ID numbers, and messages among Canvas users.

138. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members suffered actual injuries and damages.

139. These injuries include loss of privacy, loss of control over private information, diminution in value of private information, lost time, disruption, stress, anxiety, fear, frustration, and increased risk of phishing, social engineering, identity theft, fraud, and misuse.

140. Plaintiff and Class Members have spent and will continue to spend time and effort responding to the Data Breach and mitigating the risk of future harm.

24

141.    Defendant's negligence actually and proximately caused Plaintiff's and Class Members' injuries, which are ongoing and imminent.

## SECOND CAUSE OF ACTION
### Negligence *per se*
### (On Behalf of Plaintiff and the Class)

142.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

143.    Under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, Defendant had a duty to use fair and reasonable data security practices to safeguard Plaintiff's and Class Members' private information.

144.    Section 5 of the FTC Act prohibits unfair or deceptive acts or practices in or affecting commerce.

145.    The FTC has interpreted and enforced Section 5 to require businesses that collect and maintain personal information to use reasonable measures to protect that information.

146.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and Class Members' private information.

147.    Defendant's conduct was unreasonable given the nature and amount of private information it collected and stored through Canvas.

148.    Defendant's conduct was also unreasonable given the foreseeable consequences of a data breach involving student information, education-related private information, and private Canvas communications.

149.    The harm suffered by Plaintiff and Class Members is the type of harm the FTC Act is intended to prevent.

25

150. Under FERPA, 20 U.S.C. § 1232g, and its implementing regulations, education records and personally identifiable information contained in education records are treated as confidential and protected from unauthorized disclosure.

151. FERPA defines education records to include records, files, documents, and other materials that contain information directly related to a student and are maintained by an educational agency or institution, or by a person acting for such agency or institution. 20 U.S.C. § 1232g(a)(4)(A).

152. FERPA's implementing regulations recognize that outside parties may perform institutional services or functions for educational institutions only where they remain subject to restrictions governing the use and redisclosure of education records. 34 C.F.R. §§ 99.31(a)(1)(i)(B), 99.33(a).

153. As a service provider maintaining Canvas data for educational institutions, Defendant acted as a person or outside party performing institutional services or functions for FERPA-covered schools.

154. Defendant therefore knew or should have known that the student information maintained in Canvas was confidential education-related information subject to heightened privacy expectations.

155. Defendant violated the duties and standards reflected in FERPA's privacy framework by failing to reasonably protect Plaintiff's and Class Members' education-related private information from unauthorized access and disclosure.

156. Defendant's violations and failures constitute negligence per se.

157. But for Defendant's wrongful and negligent breach of its statutory and regulatory duties, Plaintiff and Class Members would not have been injured.

26

158.    The injuries suffered by Plaintiff and Class Members were the reasonably foreseeable result of Defendant's violations.

159.    As a direct and proximate result of Defendant's negligence per se, Plaintiff and Class Members have suffered and will continue to suffer the injuries and damages alleged herein.

## THIRD CAUSE OF ACTION
### Breach of Implied Contract
### (On Behalf of Plaintiff and the Class)

160.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

161.    Plaintiff pleads this claim in the alternative.

162.    Defendant contracted with educational institutions, including the University of Tennessee, to provide Canvas and related services to students, faculty, staff, and other authorized users.

163.    Plaintiff and Class Members used Canvas as authorized users and were among the persons for whose direct benefit Defendant provided Canvas services.

164.    Upon information and belief, Defendant's agreements with educational institutions required Defendant to collect, process, store, maintain, and protect student information and Canvas user data.

165.    Upon information and belief, Plaintiff and Class Members were intended beneficiaries of Defendant's agreements with their educational institutions because those agreements were designed, at least in part, to provide Canvas access and related educational services to students and other Canvas users.

27

166. Upon information and belief, Defendant's agreements with educational institutions required Defendant to maintain reasonable privacy, confidentiality, and data security safeguards for the information stored and processed through Canvas.

167. Alternatively, Plaintiff and Class Members entered into implied contracts with Defendant by using Canvas and providing, or allowing their educational institutions to provide, their private information to Defendant.

168. Plaintiff and Class Members provided their private information with the reasonable understanding that Defendant would protect it from unauthorized access, disclosure, theft, and misuse.

169. Implicit in Defendant's relationship with Plaintiff and Class Members was Defendant's agreement to use reasonable cybersecurity measures to protect their private information.

170. Implicit in Defendant's relationship with Plaintiff and Class Members was Defendant's agreement not to disclose their private information to unauthorized persons.

171. Implicit in Defendant's relationship with Plaintiff and Class Members was Defendant's agreement to provide prompt and adequate notice of unauthorized access to or theft of their private information.

172. Plaintiff and Class Members would not have used Canvas or entrusted their private information to Defendant in the absence of Defendant's express or implied promises to protect that information.

173. Defendant materially breached its contractual obligations by failing to safeguard Plaintiff's and Class Members' private information.

28

174.    Defendant materially breached its contractual obligations by failing to maintain reasonable cybersecurity safeguards.

175.    Defendant materially breached its contractual obligations by failing to prevent unauthorized access to Plaintiff's and Class Members' private information.

176.    Defendant materially breached its contractual obligations by failing to timely detect, contain, and remediate the unauthorized access.

177.    Defendant materially breached its contractual obligations by failing to provide prompt, complete, and accurate notice of the Data Breach.

178.    As a direct and proximate result of Defendant's breaches, Plaintiff and Class Members suffered damages, including loss of privacy, loss of control over private information, lost time, diminution in value of private information, stress, anxiety, and increased risk of phishing, social engineering, fraud, identity theft, and misuse.

### FOURTH CAUSE OF ACTION
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

179.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

180.    Plaintiff and Class Members had a legitimate expectation of privacy in their personal information and education-related private information.

181.    Plaintiff and Class Members were entitled to protection of that information against unauthorized access and disclosure.

182.    Defendant owed Plaintiff and Class Members a duty to keep their private information confidential.

29

183. Plaintiff and Class Members disclosed their private information to Defendant privately and for limited educational purposes.

184. Plaintiff and Class Members reasonably expected that Defendant would keep their private information confidential and would not disclose it without authorization.

185. The unauthorized acquisition of Plaintiff's and Class Members' private information is highly offensive to a reasonable person.

186. The intrusion was into private information and private affairs entitled to protection from unauthorized access and disclosure.

187. The Data Breach constitutes an intrusion into Plaintiff's and Class Members' private affairs in a manner that would be highly offensive to a reasonable person.

188. Defendant knew or should have known that Plaintiff and Class Members would consider the exposure of their private information to unauthorized actors highly offensive and objectionable.

189. Defendant knew or should have known that failing to implement reasonable cybersecurity safeguards would create a substantial risk that Plaintiff's and Class Members' private information would be accessed, disclosed, and misused without authorization.

190. Defendant invaded Plaintiff's and Class Members' privacy by failing to protect their private information from unauthorized access and disclosure.

191. As a proximate result of Defendant's acts and omissions, Plaintiff's and Class Members' private information was accessed and taken by an unauthorized actor.

192. Plaintiff's and Class Members' private information is now at risk of further disclosure, redisclosure, and misuse without authorization.

193.    Plaintiff and Class Members suffered damages as a result of Defendant's invasion of privacy.

194.    Unless enjoined, Defendant's continued possession of Plaintiff's and Class Members' private information without adequate safeguards will continue to pose a risk of additional injury.

195.    Plaintiff and Class Members have no adequate remedy at law for the continuing risk posed by Defendant's continued possession of their private information without adequate safeguards.

196.    Plaintiff, on behalf of herself and Class Members, seeks compensatory damages, injunctive relief, and all other relief available for Defendant's invasion of privacy.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

197.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

198.    This claim is pleaded in the alternative to Plaintiff's breach of implied contract claim.

199.    Plaintiff and Class Members conferred a benefit upon Defendant.

200.    Defendant benefited from collecting, processing, storing, and using Plaintiff's and Class Members' private information to operate Canvas and provide services to educational institutions.

201.    Defendant appreciated or had knowledge of the benefits it received from Plaintiff and Class Members.

31

202.    Plaintiff and Class Members reasonably understood that Defendant would use reasonable cybersecurity measures to protect the private information it collected and maintained.

203.    Defendant enriched itself by saving the costs it reasonably should have spent on data security measures to protect Plaintiff's and Class Members' private information.

204.    Instead of providing reasonable security that would have prevented or mitigated the Data Breach, Defendant failed to implement adequate safeguards.

205.    Plaintiff and Class Members suffered injury as a direct and proximate result of Defendant's failure to provide reasonable data security.

206.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full benefits it obtained from Plaintiff's and Class Members' private information while failing to adequately protect that information.

207.    Plaintiff and Class Members have no adequate remedy at law for Defendant's unjust retention of benefits obtained through its misconduct.

208.    Defendant should be compelled to disgorge into a common fund, for the benefit of Plaintiff and Class Members, all unlawful or inequitable proceeds it received because of its misconduct.

## SIXTH CAUSE OF ACTION
### Breach of Fiduciary Duty
### (On Behalf of Plaintiff and the Class)

209.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

210.    Defendant undertook the collection, processing, storage, maintenance, and protection of Plaintiff's and Class Members' private information.

211. By undertaking custody and control over Plaintiff's and Class Members' private information, Defendant assumed a fiduciary or fiduciary-like duty to act for their benefit within the scope of that relationship.

212. Defendant's fiduciary duties included safeguarding Plaintiff's and Class Members' private information.

213. Defendant's fiduciary duties included maintaining reasonable records of the information it collected, stored, maintained, and transmitted.

214. Defendant's fiduciary duties included timely notifying Plaintiff and Class Members of unauthorized access to their private information.

215. Because of the sensitive nature of the private information at issue, Plaintiff and Class Members would not have entrusted their information to Defendant had they known of Defendant's inadequate data security practices.

216. Defendant breached its fiduciary duties by failing to adequately protect Plaintiff's and Class Members' private information.

217. Defendant breached its fiduciary duties by failing to maintain reasonable cybersecurity safeguards.

218. Defendant breached its fiduciary duties by failing to prevent unauthorized access to Plaintiff's and Class Members' private information.

219. Defendant breached its fiduciary duties by failing to timely detect, investigate, contain, and remediate the Data Breach.

220. Defendant breached its fiduciary duties by failing to provide reasonably prompt and complete notice of the Data Breach.

221. As a direct and proximate result of Defendant's breach of fiduciary duty, Plaintiff and Class Members have suffered and will continue to suffer the injuries and damages alleged herein.

## PRAYER FOR RELIEF

Plaintiff and Class Members respectfully request judgment against Defendant and that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing their counsel to represent the Class;

B.    Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

C.    Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

D.    Awarding Plaintiff and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

E.    Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

F.    Awarding attorneys' fees and costs, as allowed by law;

G.    Awarding prejudgment and post-judgment interest, as provided by law;

H.    Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

I.    Granting other relief that this Court finds appropriate.

## DEMAND FOR JURY TRIAL

34

Plaintiff demands a jury trial for all claims so triable.

Dated: May 8, 2026                          Respectfully Submitted,

                                            **MARSHALL OLSON & HULL, PC**
                                            By:     */s/Jason R. Hull*
                                                    JASON R. HULL

                                            **STRANCH, JENNINGS & GARVEY, PLLC**
                                                    J. GERARD STRANCH, IV*
                                                    GRAYSON WELLS*
                                                    DARRIUS DIXON*


                                            *Attorneys for Plaintiff and the Proposed Class*

                                            * *pro hac vice* forthcoming

35